## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **RES-GA FOUR LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:10-CV-463 (MTT)** |
| | ) | |
| **AVALON BUILDERS OF GA LLC,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendants Valorie Mitchell, Five Star Sale's, Inc., Five M Paints, LLC, and The Five M Family Limited Partnership's initial Motion to Dismiss and Renewed Motion to Dismiss.[1]  (Docs. 21, 31).  For the following reasons, the initial Motion to Dismiss is **DENIED**, and the Renewed Motion to Dismiss is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff asserts various claims arising from a loan and individual guarantees of that loan.  The Defendants contend the Court lacks subject matter jurisdiction.  The relevant facts are not in dispute.

On August 28, 2007, Defendant Avalon Builders of Georgia, LLC executed a promissory note to FirstCity Bank, a Georgia corporation, in the amount of

---

[1] The claims against Defendant J. Greg Mitchell are stayed until the resolution of his bankruptcy action, *In re: Jack Gregory Mitchell*, 11-52189-JPS (Bankr. M.D. Ga.).  Defendant Avalon Builders of Georgia, LLC likely did not join in the Motions because Greg Mitchell is its sole member.  Thus, when referring to the Motions, "Defendants" refers to all Defendants except Greg Mitchell and Avalon Builders.

$1,200,000.00.  Defendant J. Greg Mitchell is the registered agent of Avalon Builders, and is the sole member.  Greg Mitchell executed an Omnibus Guaranty in connection with the loan.  Avalon Builders and Greg Mitchell failed to pay the outstanding principal balance of the note at maturity.

Between 2007 and 2008, Greg Mitchell made 22 transfers of real property to The Five M Family Limited Partnership through his ex-wife Valorie Mitchell, Five Star Sale's, Inc., and Five M Paints, LLC.  Valorie Mitchell is the registered agent for Five Star Sale's, Inc.  Valorie Mitchell is the sole member of Five M Paints, LLC.  Five M Paints is the general partner and Valorie Mitchell is the limited partner of The Five M Family Limited Partnership.

On March 20, 2009, FirstCity was closed, and the Federal Deposit Insurance Corporation was appointed receiver.  FirstCity was one of hundreds of banks thrown in the lap of the FDIC as the result of what has been called the Great Recession.  To manage and collect thousands of bad loans assumed because of these bank failures, the FDIC constructed a venture with private parties.  On February 10, 2010, the FDIC entered into an agreement with Lennar Corporation to form Multibank 2009-1 RES-ADC Venture, LLC.  Multibank conducts the day-to-day management of two FDIC portfolios of approximately 5,500 distressed residential and commercial real estate loans from 22 failed bank receiverships with a combined unpaid balance of $3.05 billion.  Press Release, Lennar Corp., Lennar Completes Transactions With the FDIC to Acquire Approximately $3.05 Billion of Real Estate Loans (Feb. 10, 2010).  The FDIC has a 60%

membership interest in Multibank and Lennar has a 40% membership interest.[2]  The FDIC assigned the Avalon Builders note to Multibank, and Multibank assigned the note to the Plaintiff.

On December 1, 2010, the Plaintiff filed this diversity action for suit on the note against Avalon Builders, breach of contract against Greg Mitchell, and attorney's fees pursuant to O.C.G.A. § 13-6-11 and O.C.G.A. § 13-1-11.  (Doc. 1).  The Plaintiff amended the Complaint to add the other Defendants and assert a claim for fraudulent transfer.  (Doc. 6).

In the Complaint and First Amended Complaint, the Plaintiff, a limited liability company, claimed to be a citizen of Florida and alleged the Defendants were citizens of Georgia.  In their initial Motion to Dismiss, the Defendants argued the Plaintiff did not disclose the citizenship of its members, and thus it was impossible to determine whether diversity existed.[3]

---

[2] Or, it could be said, Lennar has a 40% contingency fee contract for funds it recovers.  In effect, the FDIC has turned the loans over to a collection agency.  In a filing in another case, a RES-GA plaintiff put it this way:

> Due to the well-documented volume of bank failures in the past few years and the overwhelming cost of corresponding recovery efforts, the FDIC recently has endeavored to lessen the financial burden on taxpayers by entering into joint ventures with private sector asset management companies.  These transactions are structured in such a way that the FDIC maintains a majority equity interest in a failed bank's assets, while it transfers day-to-day management responsibility to expert private sector professionals who also have a financial interest in the assets and share in the costs and risks associated with ownership.

*RES-GA West, LLC v. Park West Development, LLC,* 1:10-cv-3036 (SCJ) (N.D. Ga.) (Doc. 27, at 4).

[3] The initial Motion to Dismiss also was based upon insufficient service of process, but the Defendants later waived this objection.  (Doc. 29).

The Court allowed the Plaintiff to again amend to allege the citizenship of its members.  (Doc. 23).  In its Second Amended Complaint, the Plaintiff disclosed that its sole member is Multibank, which in turn has two members:  RL RES 2009-1 Investments, LLC and the FDIC.  (Doc. 28).  RL RES' members are citizens of Delaware and Florida.[4]  Although the FDIC, a federally chartered corporation, is a member of Multibank, the Plaintiff concluded it was a citizen of Delaware and Florida for diversity of citizenship purposes.  After disclosing the FDIC as a member, the Plaintiff added 28 U.S.C. § 1331 and 12 U.S.C. § 1819 as bases for subject matter jurisdiction.[5]

---

[4] Specifically, RL RES has two members:  Rialto RL RES 2009-1, LLC and Lennar Distressed Investments, LLC.  Rialto RL RES 2009-1's sole member is Rialto Capital Holdings, LLC.  Rialto Capital Holdings, LLC's sole member is Rialto Capital Management, LLC.  Rialto Capital Management, LLC's sole member is Jeffrey Krasnoff, a Florida citizen.  Lennar Distressed Investments, LLC's sole member is Lennar Corporation, a Delaware corporation with its principal place of business in Florida.

[5] The relevant provisions of 12 U.S.C. § 1819 state:

  (b) Agency authority
    (1) Status

      The Corporation, in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28 without regard to whether the Corporation commenced the action.

    (2) Federal court jurisdiction

      (A) In general

      Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

      (B) Removal

      Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period

The Defendants filed their Renewed Motion to Dismiss, and argued the Plaintiff is a stateless entity for diversity of citizenship purposes because the FDIC is not a citizen of any state.  The Defendants also argued the FDIC is not a "party" to this action as required by 12 U.S.C. § 1819(b)(2)(A).  The Plaintiff responded that the FDIC need only be a "party in any capacity" for jurisdiction to exist pursuant § 1819(b)(2)(A).  The Plaintiff also argued, for the first time, that federal question jurisdiction exists pursuant to 28 U.S.C. § 1334(b) because these proceedings are related to Greg Mitchell's

beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

(C) Appeal of remand

The Corporation may appeal any order of remand entered by any United States district court.

(D) State actions

Except as provided in subparagraph (E), any action--

(i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
(ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
(iii) in which only the interpretation of the law of such State is necessary,

shall not be deemed to arise under the laws of the United States.

(E) Rule of construction

Subparagraph (D) shall not be construed as limiting the right of the Corporation to invoke the jurisdiction of any United States district court in any action described in such subparagraph if the institution of which the Corporation has been appointed receiver could have invoked the jurisdiction of such court.

bankruptcy action, *In re: Jack Gregory Mitchell*, 11-52189-JPS (Bankr. M.D. Ga.).[6]  The Plaintiff also requested that these proceedings be referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

## II.  DISCUSSION

The Federal Rules employ a notice pleading standard, which requires that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1).  The plaintiff bears the burden of establishing federal subject matter jurisdiction.  *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).  "A court may find a basis for federal question jurisdiction even if a complaint lacks such a jurisdictional statement, so long as the complaint makes 'references to federal law sufficient to permit the court to find [federal question] jurisdiction.'"  *Scarborough v. Carotex Const., Inc.*, 420 Fed. Appx. 870, 873 (11th Cir. 2011) (quoting *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1275-76 (11th Cir. 2010)).[7]

### A.  Diversity of Citizenship and Federal Question Jurisdiction

The FDIC's decision to place its distressed loan portfolios in the hands of private entities for collection raises novel jurisdictional issues.  The handful of district courts that have addressed these issues have held that these entities may not sue in federal court.

---

[6] The Court construes the Plaintiff's Response to the Renewed Motion to Dismiss as a motion to amend the pleadings to assert 28 U.S.C. § 1334(b) as a jurisdictional basis.  Courts may freely give leave to amend the pleadings.  Fed. R. Civ. P. 15(a)(2).  Accordingly, the Motion to Amend the Pleadings is **GRANTED**.

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

The Plaintiff cites cases in which RES-GA-style plaintiffs have proceeded to decisions on the merits, suggesting that those courts must have implicitly found subject matter jurisdiction.  More likely, defendants simply failed to recognize the jurisdictional issues raised when a party is a limited liability company.  *See Mallory & Evans Contractors & Engineers, LLC. v. Tuskegee Univ.*, __ F.3d __, 2011 WL 6015801 (11th Cir. Dec. 5, 2011) (reaffirming that a limited liability company is a citizen of any state of which a member of the company is a citizen).  The Plaintiff also cites *RES-GA Brittany Pointe, LLC v. 2 Knots on a Log, LLC*, 1:10-cv-3034 (ODE) (N.D. Ga.), in which one defendant moved to dismiss for lack of diversity of citizenship.  Whereupon the RES-GA plaintiff moved to dismiss that defendant.  The court granted the plaintiff's motion to dismiss, rendering, according to the court, moot the challenge to subject matter jurisdiction.  The court then granted the RES-GA plaintiff's motion for summary judgment against the remaining defendants.[8]  In a footnote, the court stated, without reasoning or explanation, that it "probably does have subject matter jurisdiction," presumably based on diversity of citizenship, given that was the only basis for jurisdiction claimed by the RES-GA plaintiff.  *RES-GA Brittany Pointe*, 1:10-cv-3034 (ODE) (Doc. 32, at 6 n.3).

A RES-GA plaintiff took a similar approach in another case cited by the Plaintiff, *RES-GA West, LLC v. Park West Development, LLC,* 1:10-CV-3036 (SCJ) (N.D. Ga.).  The district court, on RES-GA's motion, dismissed the defendant challenging subject

---

[8] Of course, subject matter jurisdiction cannot be conferred by consent or even by a defendant's failure to object to the court's subject matter jurisdiction.  *Eagerton v. Valuations, Inc.*, 698 F.2d 115, 118 (11th Cir. 1983).

matter jurisdiction and eventually entered judgment against the remaining defendants. The court never addressed the issue of subject matter jurisdiction.  None of these cases provides persuasive support for the Plaintiff's argument that diversity of citizenship exists here.

On the other hand, district courts that have analyzed the issue of diversity jurisdiction have uniformly concluded that the FDIC's status as a member of a limited liability company which in turn is a member of a RES-GA-style limited liability company destroys diversity because the FDIC, for purposes of diversity analysis, is not a citizen of any state.  *RES-GA Creekside Manor, LLC v. Star Home Builders, Inc.*, 2011 WL 6019904 (N.D. Ga. Dec. 2, 2001);  *RES-NV APC, LLC v. Astoria Pearl Creek, LLC*, 2011 WL 5374050 (D. Nev. Nov. 4, 2011); *RES-NC Settlers Edge, LLC v. Settlers Edge Holding Co., LLC*, 2011 WL 3897729 (W.D.N.C. Sept. 6, 2011).  In these cases, like here, Multibank was the sole member of the plaintiffs, and the FDIC was a member of Multibank, and thus there was no diversity of citizenship jurisdiction because the FDIC, a federally chartered corporation, is not a citizen of any state.

Here, the Court agrees with every other district court that has addressed the issue and thus concludes that the FDIC's status as a member of Multibank destroys diversity of citizenship.[9]

---

[9] The Court notes an "opinion" entered in *CML-NV Civic Center, LLC v. Gowan Industrial, LLC*, 2011 WL 6752406 (D. Nev. Dec. 23, 2011) which, on its face, seems to conclude that diversity jurisdiction exists notwithstanding the FDIC's interest in a RES-GA-style plaintiff.  However, the opinion is actually an uncontested application for default judgment which states the Plaintiff's contentions that diversity jurisdiction exists notwithstanding the FDIC's membership in Multibank.  Although the district court signed off on this application and entered default judgment, the Court does not consider this authoritative.

Whether subject matter jurisdiction is conferred by 12 U.S.C. § 1819 presents a more difficult question.  The courts that have addressed the issue, like the Parties' initial briefs, exclusively focus on 12 U.S.C. § 1819(b)(2)(A) which reads, "Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the [FDIC], *in any capacity*, is a party shall be deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A) (emphasis added).  In *RES-NV*, the court, with brief discussion, concluded § 1819(b)(2)(A) did not apply because the FDIC was not a "party."[10]  The court did not address the meaning or effect of "in any capacity."

The court in *RES-NC* focused on §§ 1819(b)(2)(D) and (E) titled "State Actions," which limit federal question jurisdiction in a narrow context:

> Except as provided in subparagraph (E), any action--
>
> (i)     to which the [FDIC], in [its] capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
> (ii)    which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
> (iii)   in which only the interpretation of the law of such State is necessary,
>
> shall not be deemed to arise under the laws of the United States.

12 U.S.C. § 1819(b)(2)(D).  However, subparagraph (E) confirms that federal courts have jurisdiction in actions that could have been brought by the institution of which the FDIC was appointed receiver.  Clearly, §§ 1819(b)(2)(D) and (E) are intended to provide that when the FDIC acts as a receiver defendant (or in some capacity other than as a

---

[10] Although *RES-GA Creekside Manor, LLC* included a footnote adopting the reasoning of *RES-NV* with regard to federal question jurisdiction, the holding was limited to diversity of citizenship jurisdiction.

plaintiff) and the action asserts certain state law claims against the insolvent bank, the FDIC cannot invoke federal jurisdiction simply because it is now the receiver for the bank.  However, if the insolvent bank could have removed the case, then the FDIC can remove the case.

RES-NC argued that federal subject matter jurisdiction was present because the FDIC was a party, but not as a plaintiff, and it was serving as a receiver.  The district court agreed that the FDIC was not a plaintiff and that it was acting as a receiver, but concluded that the FDIC was not a "party."  Thus, because the FDIC was not a "party" contemplated by § 1819(b)(2)(D), the court concluded "the special jurisdictional rule of 12 U.S.C. § 1819(b)(2)(E) that would have allowed FDIC to 'step into the shoes' of [the state bank did] not apply."  *RES-NC*, 2011 WL 3897729, at *3.  The court in *RES-NC* also did not address the meaning of "in any capacity."

In short, and notwithstanding its substantial interest in the litigation, courts have held that the FDIC is not a "party" to litigation brought by RES-GA-style plaintiffs and thus § 1819(b)(2)(A) does not confer subject matter jurisdiction.  The FDIC, by turning to the private sector to collect the troubled assets it has acquired, may have created for itself the worst of all possible worlds.  Because it is a stateless entity, its membership in a limited liability company destroys diversity.  Because it is not, in the strict sense, a party to the collection actions filed by its RES-GA-style plaintiffs, there is no federal question jurisdiction.

It is arguably somewhat anomalous that when considering the issue of diversity jurisdiction, courts have, in effect, considered the FDIC a party to the litigation, but when

considering the issue of federal question jurisdiction, and specifically whether the FDIC is a "party in any capacity," have ignored the FDIC's role in the litigation.

It can also be argued that Congress' intent when it enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") supports the conclusion that 28 U.S.C. § 1819 grants jurisdiction to federal courts under the circumstances here.  Before FIRREA, § 1819 granted federal jurisdiction to all suits to which the FDIC was a "party."  12 U.S.C. § 1819(a) (Fourth) (1966), *amended by* 12 U.S.C. § 1819(b) (1989).  The statute also stated "any suit to which the [FDIC] is a party in its capacity as a receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States."  *Id.*  Congress enacted FIRREA in response to the savings and loan crisis of the late 1980s and early 1990s.  *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1020 (11th Cir. 1995).  The Defendants concede "Congress granted the FDIC broad powers under FIRREA to invoke federal jurisdiction in an effort to enhance and clarify the enforcement powers of the financial institution regulatory agencies and to expand the FDIC's role in regulating and supervising such institutions." (Doc. 38, at 4).  FIRREA amended the statute to automatically grant federal jurisdiction when the FDIC is a "party in any capacity" except when the FDIC is a non-plaintiff receiver of a state bank in certain state law actions.  Even in such state law actions, the FDIC as plaintiff can invoke federal question jurisdiction.  In short, when Congress enacted FIRREA, it intended to give the FDIC in any capacity broad access to federal courts.

Even if Congress intended that "party in any capacity" means the FDIC as a named party, it is still possible that federal question jurisdiction can exist pursuant to § 1819.  Section 1819(b)(1) provides, "The [FDIC], in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28 without regard to whether the [FDIC] commenced the action."  Pursuant to 28 U.S.C. § 1345, federal courts have original jurisdiction in all civil actions commenced by the United States or an agency of the United States.  It is clear that § 1819(b)(1) provides a separate basis for federal question jurisdiction for the FDIC.  *See FDIC v. Niblo*, 821 F. Supp. 441, 448 (N.D. Tex. 1993) ("Jurisdiction is found in this matter because the FDIC is Plaintiff in this action, and thus an agency of the United States, giving rise to United States Plaintiff jurisdiction.  *Furthermore*, all civil suits to which the FDIC is a party in any capacity are deemed to arise under the laws of the United States, giving rise to federal question jurisdiction.") (emphasis added).

Significantly, § 1819(b)(1) does not require the FDIC to be a "party" in its own name.  Rather, the FDIC "in any capacity" can invoke subject matter jurisdiction pursuant to 28 U.S.C. § 1345 without regard to whether it is a "party."  Here, the FDIC in its capacity as a majority member of the owner of the Plaintiff has commenced this action.  The Plaintiff is seeking to fulfill the FDIC's mandate to collect assets of troubled banks.  Thus, it seems logical to conclude that this Court has subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and 28 U.S.C. § 1345.

This interpretation is consistent with the scheme and intent of § 1819(b).  The pre-FIRREA version of § 1819 required the FDIC to be "party."  Congress broadened

that to include situations in which the FDIC was involved in the litigation "in any capacity."  Of course, when Congress enacted FIRREA, it likely was not contemplating that the FDIC would employ the mechanism that it is now using to collect assets of failed banks.  However, given the purpose of FIRREA, it seems logical to conclude that Congress would not have intended that the FDIC in the capacity in which it is operating in this case would be barred from federal court.

However, the Court recognizes that a decision to extend or expand federal question jurisdiction cannot be made lightly.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 757 (11th Cir. 2004) (citing canons of statutory construction that direct courts to construe jurisdictional grants narrowly and avoid interpretations that aggrandize the jurisdiction of federal courts).  As logical as it may seem that the FDIC, through its subsidiaries, should be allowed to litigate its claims in federal court, particularly given Congress' intent, logic alone may not be sufficient to confer jurisdiction.  Perhaps fortunately, this Court need not reach that issue because an alternate ground for subject matter jurisdiction exists.

The Plaintiff also argues federal question jurisdiction exists pursuant to 28 U.S.C. § 1334(b).  Section 1334(b) grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[11]  Specifically, the Plaintiff argues this proceeding is related to the action in the bankruptcy court.

---

[11] Title 11 is the bankruptcy code.

The Defendants argue the bankruptcy action was not referenced in the Second Amended Complaint,[12] and thus the Court may not look outside the pleadings to determine whether they are related.  However, the Second Amended Complaint references the bankruptcy action in a footnote, which reads:

> Defendant J. Greg Mitchell filed protection under *Chapter 7 of the United States Bankruptcy Code*, a case which is currently pending in the *United States Bankruptcy Court for the Middle District of Georgia*.  As such, litigation against Defendant J. Greg Mitchell is stayed until his discharge or the dismissal of the bankruptcy case.

(Doc. 28, at 1 n.1) (emphasis added).[13]

The footnote is sufficient to meet the relatedness test.  In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, the Eleventh Circuit adopted the Third Circuit's test for determining whether a civil proceeding is sufficiently related to bankruptcy, stating:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.  The proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  "The key word in the *Lemco Gypsum* / *Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad."  *Continental National Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).

---

[12] The Complaint and First Amended Complaint were filed before the bankruptcy petition, and thus that action could not have been referenced.

[13] This footnote is essentially the "Plea of Stay" filed nearly two months before the Second Amended Complaint.  (Doc. 13).

Although the Second Amended Complaint does not explicitly reference 28 U.S.C. § 1334(b), the footnote contains sufficient facts to place the Defendants on notice that this proceeding is related to a federal bankruptcy action.  As stated in the standards for dismissal above, a complaint need only "'reference[] federal law sufficient to permit the court to find [federal question] jurisdiction.'"  *Scarborough*, 420 Fed. Appx. at 873 (quoting *Miccosukee Tribe*, 607 F.3d at 1276).  Here, the Second Amended Complaint includes counts for suit on the note, breach of contract, and fraudulent transfer.  The Second Amended Complaint states Defendant Greg Mitchell is a debtor in a federal bankruptcy action.  The Plaintiff is a creditor in that action, and the 22 real property transfers are included in Greg Mitchell's bankruptcy petition.  Based upon these facts, the Court finds these proceedings are related.

The fact that the other Parties are not debtors does not prevent the Court from finding relatedness.  All that is required is that the outcome of this action could alter Greg Mitchell's rights and the administration of the bankruptcy estate in any way.  Here, Greg Mitchell is the sole member of Avalon Builders, and the amount due on the Avalon Builders note is included in Greg Mitchell's bankruptcy petition.  Further, transfers of real property to Valorie Mitchell and entities linked to Valorie Mitchell are at issue in both actions.  Thus, it is certainly conceivable that these proceedings could have an effect on the estate being administered in bankruptcy.

Accordingly, because the Plaintiff sufficiently pled relatedness between these proceedings and the bankruptcy action, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

### B.  Referral to the United States Bankruptcy Court for the Middle District of Georgia

Because of the pending bankruptcy proceeding, the Plaintiff requests that this case be referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  That provision, enacted July 10, 1984, states, "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 *shall* be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a) (emphasis added).  Three days later, this Court entered a standing order that referred "all cases under title 11 and all proceedings arising under title 11 or arising in or related to cases under title 11" to the bankruptcy judges in this district.  *In re United States Bankruptcy Court Jurisdiction*, (M.D. Ga. July 13, 1984).  Thus, because the Court has found these proceedings are related to the bankruptcy court action, it must be referred.[14]

The Court is aware that not all issues may be resolved by a United States Bankruptcy Court.  Pursuant to 28 U.S.C. § 157(d), district courts may withdraw proceedings referred to a bankruptcy court "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  Further, the Supreme Court's decision in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011) held that bankruptcy judges lack constitutional authority to enter final judgment in some

---

[14] The Defendants ask to Court to abstain from referring these proceedings pursuant to 28 U.S.C. §§ 1334(c)(1) and (2).  There is no pending state action and, under the facts of this case, no factor identified in §1334(c)(1) favors abstention.  Accordingly, the Court, in its discretion, declines to abstain.

matters.

Stern involved a long-standing legal battle between Vickie Lynn Marshall (publicly known as Anna Nicole Smith) and her stepson E. Pierce Marshall.  Vickie married J. Howard Marshall, an elderly Texas billionaire, shortly before his death. Howard did not include Vickie in his will, and Vickie filed a Texas probate action alleging Pierce fraudulently induced his father to sign a "living trust" that excluded her.  Vickie also filed a federal bankruptcy petition in California.  Pierce entered the federal bankruptcy action as a creditor and asserted a defamation claim against the estate. Vickie asserted a counterclaim against him for tortious interference with the bequest she expected from Howard.

Pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts may enter judgments in "all core proceedings arising under title 11, or arising in a case under title 11, [or] referred under [28 U.S.C. § 157(a)].[15]  In Stern, the bankruptcy court found the counterclaim was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C), and entered final judgment in favor of Vickie.  Although the district court acknowledged that § 157(b)(2)(C) expressly classifies counterclaims as core proceedings, it recognized that not all counterclaims are core proceedings, and concluded that the tortious interference counterclaim was not a core proceeding.  Nevertheless, the district court treated the bankruptcy court's judgment as a proposed finding of fact and entered judgment in favor of Vickie.  The Ninth Circuit reversed the district court on a different ground and the Supreme Court

---

[15] The 16 enumerated types of core proceedings are found in 28 U.S.C. § 157(b)(2).

reversed and remanded to the Ninth Circuit for further consideration in *Marshall v. Marshall*, 547 U.S. 293 (2006).  On remand, the Ninth Circuit held that a counterclaim was only a core proceeding if it was "so closely related to [a creditor's] proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself."  *Marshall v. Stern (In re Marshall)*, 600 F.3d 1037, 1058 (9th Cir. 2010).  The Ninth Circuit held Vickie's counterclaim did not meet the test, and remanded.  The Supreme Court affirmed, and held the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that [was] not resolved in the process of ruling on a creditor's proof of claim."  *Stern*, __ U.S. at __, 131 S. Ct. at 2620.

The Supreme Court clarified that it only decided the "narrow" issue before the Court.  *Stern*, __ U.S. at __, 131 S. Ct. at 2620.  Courts differ on whether *Stern* is, in fact, narrow.  However, it is abundantly clear from *Stern* and cases interpreting it that there are matters that may not be decided by a non-Article III judge.

This, of course, does not mean a non-Article III judge is precluded from hearing matters and submitting proposed findings of fact and conclusions of law to a district court.  Indeed, the *Stern* majority noted that Pierce "ha[d] not argued that the bankruptcy courts 'are barred from hearing all counterclaims' or proposing findings of fact and conclusions of law on those matters…."  __ U.S. at __, 131 S. Ct. at 2620.  The majority quoted directly from 28 U.S.C. § 157(c)(1), which allows bankruptcy judges to hear and submit proposed findings of fact and conclusions of law to district judges in non-core proceedings that otherwise are related to a case under title 11.

Although § 157(b) does not expressly grant bankruptcy judges the authority to submit proposed findings of fact and conclusions of law in core proceedings, courts uniformly agree this power exists.  Section § 157(b)(1) states:

> Bankruptcy judges *may* hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and *may* enter appropriate orders and judgments….

28 U.S.C. § 157(b)(1) (emphasis added).  Significantly, § 157(b)(1) does not require bankruptcy judges to enter final judgment in core proceedings.  Congress could not have intended to provide bankruptcy judges with the authority to hear non-core proceedings related to a title 11 case and submit proposed findings of fact and conclusions of law, but not extend the same power to core proceedings.  This conclusion is consistent with pre-*Stern* precedent regarding the distinction between core and non-core proceedings.  In *Mullarkey v. Tamboer (In re Mullarkey)*, the Third Circuit stated:

> We agree with the view adopted by [*Canal Corporation v. Finnman (In re Johnson)*, 960 F.2d 396 (4th Cir. 1992)] and hold that the Bankruptcy Court was not deprived of jurisdiction over Mullarkey's Complaint for failure to make the determination under [28 U.S.C.] § 157(b)(3).  We are persuaded that this is the correct approach because § 157(b)(3) only requires that a bankruptcy judge determine whether a proceeding is core or non-core.  *Such a determination does not affect the bankruptcy court's power to hear the case.*  Rather, it affects the form of the bankruptcy court's disposition, i.e., whether it is final and appealable to the district court, or a report and recommendation to be reviewed by the district court.

536 F.3d 215, 222 (3d Cir. 2008) (emphasis added).  The rule that a bankruptcy court has the power to hear a referred case whether it is core or non-core is logical because "every core proceeding necessarily is also 'related to' the bankruptcy case for purposes

of 28 U.S.C. § 1334(b)."  *Goldstein v. Eby-Brown (In re Universal Marketing, Inc.)*, 459

B.R. 573, 579 (Bankr. E.D. Pa. 2011).  "One might say that every core proceeding is

related, but not every related proceeding is core and that a matter must at least be

related to the bankruptcy for the bankruptcy court to exercise any type of subject matter

jurisdiction."  *Id.*

The Court acknowledges that the court in *Samson v. Blixseth (In re Blixseth)*,

2011 WL 3274042, at *12 (Bankr. D. Mont. Aug. 1, 2011) concluded that "[u]nlike in

non-core proceedings, a bankruptcy court has no statutory authority to render findings

of fact and conclusions of law for core proceedings that it may not constitutionally hear."

This holding has already faced serious criticism.  *See Heller Ehrman LLP v. Arnold &*

*Porter (In re Heller Ehrman LLP)*, __ F. Supp. 2d __, __ 2011 WL 6179149, at *6-7

(Bankr. N.D. Cal. Dec. 13, 2011) (disagreeing with *In re* Blixseth because the procedure

is not prohibited by title 28, § 157(a) grants broad discretion to district courts, and *Stern*

"favorably described" the procedure); *McCarthy v. Wells Fargo Bank, N.A. (In re El-*

*Atari)*, 2011 WL 5828013, at *4 (E.D. Va. Nov. 18, 2011) ("[T]he *Blixseth* conclusion fails

to consider properly the text of the Bankruptcy Act as well as the limiting language of

*Stern.*"); *In re Universal Marketing, Inc.*, 459 B.R. at 577-580 (disagreeing with *In re*

*Blixseth* because the core/non-core distinction does not affect subject matter

jurisdiction, there is no category of proceedings that are core, but not related, and the

absence of a provision permitting bankruptcy courts to submit proposed findings of fact

is not a prohibition); *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298, 300 n.1

(Bankr. N.D. Ill. 2011) ("The argument, however, ignores the remedy flowing from

*Stern's* holding that the statute unconstitutionally allows judgments to be entered by a non-Article III court.  As noted in the text above, *Stern* states that the remedy for this constitutional violation is to remove counterclaims covered by the decision from core jurisdiction.  With this remedy, the counterclaim is no longer covered by the statutory definition of 'core.'  As a result, to the extent that the estate's claims are not subject to a final judgment by the bankruptcy court, they are non-core, and fully within the definition of related-to jurisdiction in § 157(c)(1).") (internal citation omitted).

In view of pre- and post-*Stern* jurisprudence, the Court disagrees with *In re Blixseth* and concludes that bankruptcy courts have authority to hear and submit proposed findings of fact and conclusions of law in proceedings related to title 11 cases, regardless of whether they are classified as core or non-core.  While the contours of claims of which a bankruptcy court may enter final judgment are largely uncertain post-*Stern*, the Court is confident the bankruptcy court has, at a minimum, subject matter jurisdiction to hear these related proceedings.

Accordingly, because these proceedings are related to the bankruptcy action and the bankruptcy court has subject matter jurisdiction, they are referred pursuant to 28 U.S.C. § 157(a).

## III.   CONCLUSION

For the foregoing reasons, the initial Motion to Dismiss is **DENIED** as moot.  The Motion to Amend the Pleadings is **GRANTED**.  The Renewed Motion to Dismiss is **DENIED**.  These proceedings shall be **REFERRED** to the bankruptcy action, *In re: Jack*

*Gregory Mitchell*, 11-52189-JPS (Bankr. M.D. Ga.).

**SO ORDERED**, this the 4th day of January, 2012.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT